IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                           DALLAS DIVISION

UNITED STATES OF AMERICA,        §
                                 §
          Plaintiff,             §
                                 §
VS.                              §  Criminal No. 3:07-CR-359-D
                                 §
ANTONIO DESMOND STONE,           §
                                 §
          Defendant.              §

                        MEMORANDUM OPINION
                           AND ORDER

   A jury convicted defendant Antonio Desmond Stone ("Stone") of the offenses of conspiracy to commit bank fraud and aggravated identity theft, in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. § 1344; and aggravated identity theft, in violation of 18 U.S.C. § 1028A.  Stone now moves under Fed. R. Crim. P. 29(c)(1) for a judgment of acquittal regarding two bank fraud convictions (counts 3 and 4), both of which charged him with criminal culpability as an aider and abettor.  Because a reasonable jury could have found that the government proved beyond a reasonable doubt all the elements of these two offenses, and that Stone aided and abetted their commission, the court denies the motion.

                                 I

   Stone moves for a judgment of acquittal, challenging the sufficiency of the evidence supporting the verdict as to counts 3 and 4 of the superseding indictment.  These counts charged Stone

with aiding and abetting a scheme to defraud First Convenience Bank ("FCB") by creating and passing counterfeit checks drawn on the account of an FCB customer A.P.[1] ("A.P. account").  Count 3 alleges that Eddie Davis ("Davis") cashed a $5,500 forged check, dated April 20, 2007, from the A.P. account ("Davis check").  Count 4 charges that Brandon Francis ("Francis") cashed a $7,900 forged check, dated April 20, 2007, from the A.P. account ("Francis check").  Each count alleges that Stone is criminally culpable as an aider and abettor.

Stone does not challenge the sufficiency of the evidence that supports the jury's finding that Davis and Francis committed the substantive offense of bank fraud by cashing the forged checks that form the basis for the convictions on counts 3 and 4.  Rather, Stone focuses his challenge on the jury's finding that he aided and abetted Davis and Francis in committing bank fraud.  Stone points out that neither Davis nor Francis testified at trial, and that both had at some point told a government investigator that they did not know Stone.  The evidence supports the finding that Stone acquired the account information on the A.P. account before Davis and Francis cashed the counterfeit checks referenced in counts 3 and 4.  Stone nevertheless contends that there is no evidence from which the jury could have reasonably found that Stone wrote these

---

[1]The court abbreviates the names of the victims of bank fraud and identity theft throughout the opinion.

- 2 -

checks or even handled them. Furthermore, the evidence showed that a man named "Jabo"[2] participated in passing the counterfeit check. For these reasons, Stone argues that the evidence is insufficient to support the jury's finding that he aided and abetted Davis and Francis in committing bank fraud by creating or passing counterfeit checks to them drawn on the A.P. account, i.e., the Davis check and the Francis check.

II

"'A motion for judgment of acquittal challenges the sufficiency of the evidence to convict.'" *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)). "When the defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).[3] "While the evidence need not exclude every reasonable hypothesis of

---

[2]The trial evidence never disclosed "Jabo's" surname or whether "Jabo" was a nickname or a street name.

[3]This standard applies rather than the "manifest miscarriage of justice" standard because Stone timely filed his motion for judgment of acquittal within seven days of the guilty verdict. *See* Rule 29(c)(1); *United States v. Allison*, 616 F.2d 779, 784 (5th Cir. 1980).

innocence or be wholly inconsistent with every conclusion except that of guilt in order to be sufficient, [the defendant is entitled to relief] if the evidence tends to give equal or nearly equal circumstantial support to guilt or innocence[.]" *United States v. Williams*, 520 F.3d 414, 420 (5th Cir. 2008) (internal quotation marks and brackets omitted).

"To prove that a defendant aided and abetted, the Government must prove that the . . . elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed." *United States v. Peñaloza-Durante*, 473 F.3d 575, 579 (5th Cir. 2006). "[T]o aid and abet, a defendant must share in the intent to commit the offense as well as play an active role in its commission." *Id.* (internal quotation marks omitted). "It is not enough to show that he engaged in otherwise innocent activities that just happened to further the criminal enterprise." *Id.* Aiding and abetting may be established wholly through circumstantial evidence. *See, e.g., United States v. Baldarrama*, 566 F.2d 560, 565 (5th Cir. 1978).

"Where, as here, a defendant asserts *specific grounds* for a specific element of a specific count for a Rule 29 motion, he waives all others for that specific count." *United States v. Herrera*, 313 F.3d 882, 884 (5th Cir. 2002). Because Stone specifically challenges only the aiding and abetting element of his

convictions on counts 3 and 4, he has waived any sufficiency-of-the-evidence challenge to the finding that Davis and Francis each committed the substantive offense of bank fraud by cashing a counterfeit check drawing upon the A.P. account, i.e., the Davis check and the Francis check. Therefore, the only issue presented by Stone's motion is whether a rational trier of fact could have found beyond a reasonable doubt, when viewing the evidence in a light most favorable to the government, that Stone aided and abetted Davis and Francis in the commission of the respective bank fraud offenses charged in counts 3 and 4.

III

A

Viewed in a light most favorable to the government, the trial evidence establishes the following facts based on the direct testimony of Natasha McGruder ("McGruder"), Williana Johnson ("Johnson"), and Meoshia Guidry ("Guidry"). In March 2007, when McGruder was at Stone's house, Stone proposed a plan to make them some money. Stone told McGruder that if they could obtain confidential bank account information, he would be able to get them some money. To obtain this banking information, Stone asked McGruder if she knew anyone who worked at a bank. After some time, McGruder agreed to Stone's plan and, later that month, contacted Johnson, a friend of hers who worked at FCB. While at Johnson's apartment, McGruder told Johnson that she needed money and that she

had a plan to get it through counterfeit checks. McGruder also said that she had a friend who made counterfeit checks. Johnson then gave McGruder the confidential information of M.K., an FCB customer. Johnson also provided McGruder a copy of a canceled check written by M.K., so that M.K.'s signature could be forged. McGruder relayed to Stone the confidential banking information of M.K. and told Stone about Johnson, her inside contact at FCB. On March 30, 2007 Stone asked McGruder to call FCB to change the listed telephone number for M.K.'s account. Pretending to be M.K., McGruder called FCB and changed the telephone number for M.K.'s account. Stone was present when McGruder made this telephone call, and he provided McGruder the new number for the M.K. account.

On March 31, 2007 Stone drove McGruder to a Kroger grocery store in Dallas, where McGruder planned to cash a counterfeit M.K. check at the FCB located inside the Kroger. When Stone and McGruder arrived at the store, and while the two were still in Stone's car, McGruder observed Stone fill out a counterfeit check in the amount of $6,500 on the M.K. account. The check was payable to "A.G." Stone also gave McGruder a fake identification card for A.G. with McGruder's picture on it. McGruder went inside to cash the check while Stone waited outside in the parking lot. The manager at the FCB, however, discovered that the check was fraudulent and would not honor it. McGruder left the store carrying some merchandise without having paid for it, and she set

off the store's alarm and was arrested.

In early April 2007 Stone met McGruder's friend, Johnson, at a party. Stone told Johnson that his line of business was making fake checks, IDs, and gift cards. Johnson was unaware that Stone was the same person whom McGruder had referred to as the friend who made counterfeit checks. Soon after meeting Johnson, Stone asked her if she wanted to help him make fake checks. After a few days, Johnson agreed to Stone's plan. Johnson met Stone and provided him A.P.'s confidential account information, including her full name, social security number, account number, routing number, and the date and amount of the last deposit on the A.P. account. Johnson also gave Stone a copy of A.P.'s signature. Before Johnson met Stone to deliver this information, he had told her what information he needed to make counterfeit checks.

Stone first met Guidry in March 2007. Stone and Jabo, a man whom Guidry had met before meeting Stone, together approached Guidry about the possibility of making some money. In early April 2007 Jabo asked Guidry to call Viewpoint Bank ("VB") to change the account telephone number for a VB customer, A.M. Guidry did make the telephone call to VB and changed the telephone number for A.M.'s account, replacing it with a new telephone number that Jabo provided. On April 10, 2007 Guidry and Jabo met Stone in the parking lot of a club. Jabo and Guidry were in the same car, but Jabo exited the vehicle and walked over to Stone's car. Stone was

wearing white surgical gloves, and he handed Jabo a check wrapped in white paper. Jabo returned to the car and gave Guidry the check. The check, which was in the amount of $5,700, was a forged check drawn on A.M.'s account and was payable to Guidry. Jabo drove Guidry to VB, where Guidry successfully cashed the counterfeit check drawn on A.M.'s account. Guidry and Jabo returned to the club to meet Stone and give him $5,700 in cash.

Some days later, Jabo asked Guidry to cash another counterfeit check. On April 20, 2007, at Jabo's prompting, Guidry called FCB to change the listed telephone number for the A.P. account. Jabo provided Guidry the new telephone number. The next day, April 21, 2007, Guidry met alone with Stone outside a restaurant to pick up a forged $5,700 A.P. check payable to Guidry. Guidry went to FCB, cashed the check, and returned to the restaurant to meet Stone and give him $5,700 in cash from the A.P. check.

B

Succinctly stated, the trial evidence establishes the following facts. Stone told people that he was in the business of making fake checks. Some days after receiving the confidential banking information of M.K. from McGruder (and indirectly from Johnson), Stone provided McGruder a counterfeit check drawn on the M.K. account, intending to share in the proceeds of the cashed check. Stone later passed to Guidry another counterfeit check drawn on the A.M. account. After Guidry cashed the check, Stone

received $5,700 in cash.  In early April 2007 Stone received from Johnson the confidential banking information on the A.P. account, including A.P.'s name, social security number, account number, routing number, last deposit information, and an image of A.P.'s signature.  On April 21, 2007, after Jabo pushed Guidry to change the listed telephone number on the A.P. account, Stone passed to Guidry a counterfeit check drawn on the A.P. account.  Guidry cashed this check and gave the entire sum of $5,700 to Stone.  The Davis check and Francis check, also drawn on the A.P. account, were cashed on April 20, 2007 and April 21, 2007, respectively.  The check numbers of the Davis check and Francis check were 105 and 113, respectively.  The check number of the A.P. check that Stone passed to Guidry was 106.  This check, as well as the Davis check and the forged A.M check that Stone handed Guidry, all appear to be written in the same handwriting.[4]

The evidence demonstrated that Jabo was also involved in passing some of the fraudulent checks described above, but there was no evidence to suggest that Jabo's involvement in the scheme was independent of assisting Stone.  Whether Davis received the check directly from Jabo, Stone, or some other accomplice is immaterial, provided that Stone was part of the chain of delivery.

---

[4]As the court explains in the next paragraph, that the Francis check appears to be written in different handwriting than the other three checks would not prevent a reasonable jury from finding beyond a reasonable doubt that Stone played a part in passing that check to Francis.

The same is true for Francis and the Francis check. Viewing the evidence in a light most favorable to the government, a reasonable jury could have found beyond a reasonable doubt that Stone directly or indirectly passed the Davis check, forming the basis of count 3 of the superseding indictment, and that Stone directly or indirectly passed the Francis check, forming the basis of count 4. A reasonable jury could also have found that, in passing the Davis check and the Francis check, Stone intended that Davis and Francis succeed in committing bank fraud by cashing or attempting to cash the Davis check and the Francis check. Therefore, the trial evidence sufficiently supports the jury's aiding and abetting verdict with respect to counts 3 and 4 of the superseding indictment.

\* \* \*

For the reasons explained, the court denies Stone's June 26, 2008 motion for judgment of acquittal.

**SO ORDERED.**

August 6, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE